# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BROWN, Minors.

UNPUBLISHED
March 6, 2018

No. 338852
Ingham Circuit Court
Family Division
LC No. 15-000846-NA

Before: CAVANAGH, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to his minor children, JKB and JRB, under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm).[1] We affirm.

## I. RELEVANT FACTS AND PROCEEDINGS

In July 2015, petitioner, the Department of Health and Human Services (DHHS) sought to remove the children from respondent and their mother following a domestic violence incident in which respondent allegedly slapped, punched, and choked the children's mother and shoved JKB to the ground. Following that incident, respondent was found in possession of marijuana and tested positive for THC and cocaine. The trial court authorized the petition after the hearing referee found that the children's living situation was "chaotic and unstable" due to their parents' domestic violence, unstable housing, untreated mental health issues, and substance abuse. The children were placed in a non-relative foster-care home, and respondent was afforded supervised visitation.

Respondent pleaded to the allegations in an amended petition at an adjudication hearing held on August 24, 2015. Specifically, he pleaded to a criminal history that included domestic violence, drug use, and a lack of stable housing. Subsequently, respondent signed a Parent Agency Treatment Plan, and the trial court entered an order that required respondent to comply with this plan.

---

[1] The order also terminated the children's mother's parental rights pursuant to MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (g), and (j). She is not a party to this appeal.

-1-

The trial court held periodic dispositional review hearings for this case from September 2015 through March 2017. The record indicates that respondent was incarcerated in the Eaton County Jail from approximately September 2015 until May 2016 after pleading no contest to charges of domestic violence and possession of marijuana. At the initial disposition hearing, respondent's caseworker at the time, Ernest Woods, testified that respondent had been eager to start services after his adjudication. At a December 11, 2015 review hearing, Woods testified that, prior to his incarceration, respondent had been "very engaging" with his children during supervised visitation. Although Woods intended to refer respondent to anger management and GED programs available at the jail, it does not appear from the record that he followed through on that intention. At a March 2016 review hearing, respondent told the court that he was not eligible to participate in the jail's programs anyway because of his classification of "max."[2]

On May 20, 2016, respondent informed the foster-care agency that he was out of jail. Woods testified at a review hearing in June the respondent had done "exceptionally well" initiating all of his services. He had attended an orientation at Wellness, InX, a Lansing rehabilitation center, where he would receive a psychological evaluation and mental health counseling, and help with employment, housing, and parenting classes. He was participating in drug screenings three times a week and visiting his children weekly. Woods also stated that he was assessing respondent's sister to provide "respite care" for the foster-care family, and that the arrangement might segue into a placement. Woods said that respondent had cooperated fully and was doing everything Woods wanted him to do.

At a September 23, 2016 permanency planning hearing, Woods recommended termination of respondent's parental rights, supporting his recommendation with a constellation of reasons. Woods said that although respondent had made a promising start after his release from jail, he had tested positive for THC, been aggressive toward Woods and staff at Wellness, InX, and resisted the recommendations of the staff and instructions of his probation officer regarding what barrier to reunification to address first. Although respondent knew he was supposed to begin by addressing his substance abuse problem, he had decided to start something else. Respondent had stopped visiting his children about six weeks after his release, subsequent to which the children began showing signs of anger and aggression. In addition, respondent had been arrested for violating the terms of his probation and incarcerated in the Michigan Department of Corrections Saginaw Correctional Facility, where he was expected to remain for 28 months. Woods also testified that he was working on relative placement with respondent's sister, and had scheduled a home study for the following week. Further, respondent had left Woods a voicemail indicating that he wanted to release his parental rights to the children, and Woods told the court that he planned to go to the prison so respondent could execute that release. Respondent's attorney noted that respondent was very impulsive and recommended that Woods take respondent's sister with him to provide assurance that respondent had thought through his decision. For reasons not clear from the record, the home study did not proceed as scheduled, and respondent did not voluntarily release his parental rights.

---

[2] It is unclear from the record why or when respondent received this classification.

On March 23, 2017, petitioner submitted a supplemental petition seeking to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).[3]  At a termination hearing held on May 22, 2017, foster-care worker Shonna Simms-Rosa focused on respondent's participation in the case services plan during the time he was not incarcerated.  She testified that respondent attended only a fraction of the visitation opportunities available to him, and failed to acquire stable housing despite referrals from housing agencies.  He had missed a third of his drug screens and had tested positive for THC on July 2, 2016, after which date there were no screening results on file.  She reported that respondent's substance abuse counselor said he had missed many sessions and made little progress in relevant areas.  Respondent was referred for a psychological evaluation, which there is no record of his having completed, and Wellness, InX, was unable to "get through" mental health counseling with him.  With regard to domestic violence, Simms-Rosa testified that Wellness, InX, offered a six- to eight-week program, but respondent attended only three sessions.  Respondent was reportedly working two jobs, but had not provided the agency with employment verification, so Simms-Rosa did not know where he had worked.

Simms-Rosa also noted that respondent had not completed any of the programs available to him in prison.  She testified that respondent had enrolled in a Violence Prevention Program but was expelled after he got into a fight.[4]  She also noted that respondent was on a waiting list for Phase II substance abuse, but his counselor at the prison told her there was no record of his having completed Phase I.[5]  There was also no record of respondent's alleged enrollment in a parenting class.  Based on the record before her, Simms-Rosa concluded that respondent had not made progress in the areas that caused the children to come into care.

With regard to the children's best interests, Simms-Rosa testified that she did not believe that the children had an emotional bond with respondent.  She said she had no reason to doubt that respondent loved his children, but noted that in her visits with them, the children rarely talked about their parents.  Based on his lack of involvement in the programs available to him, she was unable to say whether he had the capacity to give the children love, affection, and guidance, but she could say that nothing indicated that he had the capacity to provide the food, clothing, or medical care they needed.  At no time during these proceedings had he been able to provide the children with a stable, satisfactory environment, or any stability for himself.  Even though the agency was investigating respondent's sister for possible placement and potential adoption of the children, Simms-Rosa opined that termination of respondent's parental rights

---

[3] The delay in filing the petition appears attributable in part to changes in personnel. Respondent's case was transferred from Woods to another foster-care worker on October 24, 2016, and then to foster-care worker Shonna Simms-Rosa on December 13, 2016.

[4] Respondent testified at the termination hearing that he completed the program, but his certificate had been revoked after his misconduct.  He was expecting to re-take the program in June 2017.

[5] Respondent stated that he did not have to take Phase I, it was merely recommended.  He had to take Phase II, and he anticipated being in it by June 2017.

was still appropriate because there was no evidence that he had the ability to provide permanency, safety, and well-being for the children. On cross-examination, Simms-Rosa acknowledged that she had not visited or spoken with respondent, and that she had not referred him to any services during the six months she had been his caseworker. She indicated that she had sent him a certified letter, to which he had not responded, and that she had been in conversation with his prison counselor. In addition, she stressed that she based her assessment and recommendations on her review of his file and professional opinion.

Respondent appeared at the termination hearing telephonically, and testified that he had received no referrals for services while he was in prison, and that he was taking the initiative to enroll in the programs available to him. In addition to the Violence Prevention Program and Substance Abuse Phase II, he was enrolled in an employment readiness program and was on a waiting list to take GED classes. He said that he loved his children and would provide a proper home for them upon his release and, therefore, that termination of his parental rights was not in their best interests. He thought Simms-Rosa's testimony about how many times he visited his children was incorrect, but he had not recorded how many times he visited them. He also alluded to having become overwhelmed with working two jobs, trying to participate in services, and all of the other stress he was experiencing in his life.

Ruling from the bench at the close of the hearing, the trial court made findings of fact regarding gaps in respondent's visitation record, his lack of stable housing when he was not incarcerated, his spotty drug-screen record, and his failure to progress in substance abuse treatment, to complete mental health evaluations and treatment, and to address his issues with violence. The court concluded that petitioner had met its burden to prove the existence of statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (g), and (j), and that termination was in the children's best interest. Accordingly, the trial court entered an order that terminated respondent's parental rights.

## II. ANALYSIS

### A. REASONABLE EFFORTS

Respondent first argues that petitioner did not provide him with adequate services while he was incarcerated. Because respondent did not object to petitioner's alleged failure to provide him with adequate services, this issue comes to the Court unpreserved. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). We review unpreserved issues for plain error affecting substantial rights. *In re Ultrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. at 9.

"[W]hen a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). "The state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). An absence of reasonable efforts to provide services aimed at reunification may render termination premature. See *id*. However, parents have "a commensurate responsibility . . . to participate in the services that are offered." *Frey*, 297 Mich App at 248.

As already indicated, respondent was incarcerated in the Eaton County Jail from September 2015 until May 2016. At the dispositional review hearing on September 24, 2015, respondent's first caseworker, Woods, said that he would refer respondent to anger management and GED services in jail, but the record does not show that he made contact with anyone at the jail or with respondent during his incarceration. Assuming for the sake of argument that Woods's actions did not constitute "reasonable efforts," *Mason*, 486 Mich at 152, respondent cannot claim prejudice because he testified at the March 17, 2016 review hearing that his particular classification rendered him ineligible to participate in any programs while in the jail. Therefore, even if Woods's actions were deficient, there was no plain error because there was no prejudice. See *Ultrera*, 281 Mich App at 8.

Once respondent was released from the Eaton County Jail, the record shows that he started out "exceptionally well" in setting up services, but resisted addressing his substance abuse issue, attended only three sessions of a six- to eight-week domestic violence class, and despite referrals for housing assistance, failed to find stable housing for himself, let alone his children. Approximately six weeks after his release, he stopped visiting his children. Thus, once services were provided, respondent participated only partially until he was incarcerated again in September 2016 for probation violations.

Once in prison, respondent did not respond to his caseworker's correspondence. Further, notwithstanding respondent's assertion that he was taking the initiative to engage in programs, there was no evidence at the time of the termination hearing that he had successfully completed any of the programs that were available to him and that would have addressed the barriers to reunification with his children. He also acknowledged that he was not currently participating in any programs. From his May 20, 2016 release from Eaton County Jail until the May 22, 2017 termination hearing, respondent had nearly a year to participate in services that would have addressed at least two of the three barriers to reunification with his children. The record shows that his participation was partial, his progress was minimal, and his completion rate was zero. In light of this record, we cannot say that there was an "absence of reasonable efforts" to secure reunification, which would render termination premature. *Mason*, 486 Mich at 152.

## B. RELATIVE PLACEMENT

Next, respondent argues that termination was erroneous because petitioner failed to investigate his sister as a potential placement for the children. In *Mason*, our Supreme court held that "the mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination" if proper care and custody can be achieved through placement with relatives. *Mason*, 486 Mich at 160. Therefore, it is error for the trial court to fail to consider a child's placement with a relative before terminating a parent's rights. See *id.* at 163. Such a failure results in "a hole in the evidence on which the trial court based its decision to terminate." *Id.* at 160 (quotation marks and citation omitted).

Respondent's sister was suggested as a possible placement for the children at the beginning of the case, but did not have a home large enough to accommodate them. Upon respondent's release from jail in May 2016, his caseworker was informed that respondent's sister had moved to a suitably-sized apartment. However, because the children were thriving in their foster home, the caseworker decided to begin respite weekends with the sister instead of

-5-

suddenly uprooting them. However, during visitation with the children, the sister allowed the children to see their mother and speak to respondent on the phone unsupervised. This led the caseworker to suspend visitation so that the sister could be reevaluated. The record shows that the agency did investigate placement with the sister, although its investigation was slowed by a change in foster-care workers and by the sister's own actions. At the termination trial, the children's visitation with respondent's sister had resumed, and petitioner was still considering her for possible placement leading to adoption. But they were not placed with a relative at the time of termination, a fact which the trial court expressly acknowledged three times when issuing its ruling at the end of the termination hearing. Accordingly, there was not "a hole in the evidence on which the trial court based its decision."[6] *Id.*(quotation marks and citation omitted).

## C. TERMINATION

Although respondent does not expressly appeal the trial court's termination decision, our review of the record leads us to conclude that the trial court did not clearly err when it determined that petitioner had established the statutory ground for termination under MCL 712A.19b(3)(c)(*i*) by clear and convincing evidence.

## 1. STATUTORY GROUNDS

We review a trial court's findings that a statutory ground for termination has been established under the clear error standard. MCR 3.977(K); *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000), abrogated in part on other grounds as stated in *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). Under that standard, the trial court's decision must be "more than just maybe or probably wrong." *In re Trejo Minors*, 462 Mich 341, 356; 612 NW2d 407 (2000) (quotation marks and citation omitted).

Although the trial court did not identify the grounds by their statutory designation, it described them by their content, and it is plainly apparent from the record that the trial court found that clear and convincing evidence established each statutory ground identified by petitioner. Termination under MCL 712A.19b(3)(c)(*i*) is proper if "182 days or more have elapsed since the issuance of an initial dispositional order" and the "conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be

---

[6] Moreover, even if the children had been placed with respondent's sister during the proceedings, that fact might have weighed against termination, but it would not have been an absolute bar to termination. *In re Mason*, 486 Mich at 164. In the present case, the children had not been successfully placed with respondent's sister during the child protective proceedings, and Simms-Rosa expressly addressed why termination would still be in the children's best interests despite the possibility of placing them with her. The trial court also noted at the time of its ruling that "there are some concerns about whether or not [respondent's sister]'s going to be determined by the agency to be an appropriate placement for the children.

rectified within a reasonable time considering the child's age." Termination under MCL 712A.19b(3)(g) is proper if the "parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Termination under MCL 712A.19b(3)(j) is proper if there "is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

The conditions that led to respondent's adjudication were domestic violence, unstable housing, and substance abuse. When not incarcerated, respondent partially participated in services; however, he missed parenting times, did not obtain stable housing, only attended two-thirds of his drug screens, tested positive once for drugs, and did not complete substance abuse treatment, mental health counseling, or a domestic violence program. Although it was commendable that respondent reached out for services as soon as he was out of jail and participated to an extent, ultimately, he did not substantially rectify any of the issues that existed at the time of the adjudication. MCL 712A.19b(3)(c)(*i*). Furthermore, he was incarcerated and would not be released until March 2018, and as discussed above, he had not successfully completed any of the programs available to him in prison that would have addressed his violence and substance abuse issues. Given his history of partial participation in and minimal benefit from the services provided, it was unlikely that he would be able to rectify the issues within a reasonable amount of time, given the children's ages and the fact that they had already been in care for nearly two years. MCL 712A.19b(3)(c)(*i*). Accordingly, we are not left with a definite and firm conviction that a mistake has been made. *In re BZ*, 264 Mich App 296-297. Because petitioner only needed to establish one ground for termination, we need not address whether the trial court properly found additional grounds. *In re Powers Minor*, 244 Mich App 111, 119; 624 NW2d 472 (2000).

## 2. BEST INTERESTS

MCL 712A.19b(5) provides, "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." The petitioner must prove by a preponderance of the evidence that termination is in the best interests of the child. See *In re Laster*, 303 Mich App 485, 496; 845 NW2d 540 (2013). Factors to consider include the child's bond to the parent; the parenting ability of the respondent; the child's need for permanency, stability, and finality; and comparison of the relative advantages of the parent's home and the child's foster home. *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). The trial court may also consider "the length of time the child was in care, the likelihood that 'the child could be returned to [his] parents' home within the foreseeable future, if at all,' and compliance with the case service plan." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015), quoting *In re Frey,* 297 Mich App at 248-249. In addition, the court may consider "the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

With regard to whether termination was in the best interests of the children, the trial court noted the lack of bond between the children and respondent, and their bond with the foster

parents, who provide for all of the children's needs. The record also shows that the children, who were five-years old and two-years old at the time, had been in care for nearly two years, and there was no likelihood that they could be returned to respondent's home within the foreseeable future, given respondent's failure to comply with and benefit from his case service plan. See *In re Payne/Pumphrey/Fortson*, 311 Mich App at 64. The trial court noted that it was unfortunate that the children were not in a pre-adoptive placement and opined that it was in the children's best interests to become available for adoption so that they could be located in a stable, secure, and permanent environment. In light of the record, we cannot say that the trial court clearly erred by finding that a preponderance of the evidence proved that termination was in the best interests of the children. See *In re Laster*, 303 Mich App at 496.

Affirmed.


/s/ Mark J. Cavanagh
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering